IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael James Capone,<br><br>    Defendant. | **CR 05-1115-001-TUC-RCC (JCG)**<br><br>**REPORT AND RECOMMENDATION** |

On November 21, 2008, the government filed under seal a Petition to Revoke Supervised Release. (Doc. No. 30.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral made on September 6, 2006, pursuant to LRCrim 5.1. (Doc. No. 19.)

Defendant's Motion was set for evidentiary hearing; evidence was heard on January 21, 2009. Defendant, who is in custody, was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, GRANT the Petition to Revoke Supervised Release.

**FACTS**

In its Petition to Revoke, the government alleges the Defendant violated the terms of his Supervised Release in four ways: (1) Defendant violated Standard Condition 1, which prohibits commission of another crime, by driving under the influence of alcohol, in violation of ARS § 28-1381(A)(1) and (2); (2) Defendant violated Standard Condition 1 by committing the offense of extreme driving under the influence, in violation of ARS § 28-1381(A); (3) Defendant violated Standard Condition 13, which required Defendant to notify immediately his probation officer if arrested or questioned by law enforcement; and (4) Defendant violated Special Condition 3, which prohibits use of alcohol. All of the alleged violations arose out of an incident which occurred on November 10, 2008.

At the evidentiary hearing, the government presented three witnesses. Those witnesses testified to the following facts. United States Probation Officer David Forsberg testified that he met with defendant on June 17, 2008, when Defendant's term of supervised release began and instructed him on each of his conditions of supervised release. The Defendant acknowledged each condition by placing his initials next to each condition. At the end of the meeting, Officer Forsberg asked the Defendant if he understood all conditions and if he had any questions. Defendant appeared to understand all of the conditions.

Officer Forsberg first became aware that the Defendant might be in violation of his conditions when he received a voice message from Sergeant Joseph Knipp of the Pima County Sheriff's Department informing him that Defendant had been arrested and when he received a Supervised Release "hit" which is a notification that someone who is under supervision has been arrested. After receiving this information, Officer Forsberg obtained reports of the November 10, 2008, arrest of Defendant by Sgt. Knipp.

Sgt. Knipp testified that he has been employed by the Pima County Sheriff's Department for 16 ½ years. On November 10, 2008, at approximately 11:25 pm, Sgt. Knipp was patrolling near Valencia and Midvale in Pima County. He observed a vehicle taking off from the intersection at a high rate of speed, weaving, crossing and straddling lane dividers, jerking the wheel to come back into its own lane, and traveling up to 65 mph where the

1  posted speed limit was 35 mph. Sergeant Knipp activated his lights and the vehicle pulled
2  over on Mission Road. Defendant was the driver. He opened his door a crack to talk to
3  Sergeant Knipp. (His window would not roll down.) Sergeant Knipp smelled the odor of
4  intoxicants coming from inside the car and observed four others in the vehicle. He asked the
5  Defendant to get out so that he could talk to him individually. He observed that the
6  Defendant used the vehicle door for support in getting out of the vehicle. He saw that the
7  Defendant's eyes were red, watery and blood shot. He smelled intoxicants from Defendant's
8  mouth.

9  Sgt. Knipp asked the Defendant standard questions to eliminate a medical condition
10 as the cause of Defendant's driving. When asked whether he had been drinking alcohol,
11 Defendant responded that he had. Sgt. Knipp also conducted a horizontal gaze nystagmus
12 test and noted six clues.[1] Sergeant Knipp testified that observing four or more clues indicates
13 possible legally impairment. Sgt. Knipp also administered a preliminary breath test which
14 had a positive result for consumption of alcohol.[2]

15 Defendant declined other field sobriety tests. He consented to a blood draw to
16 determine his Blood Alcohol Content. Sgt. Knipp testified that he observed Deputy Gifford,
17 a certified phlebotomist, draw Defendant's blood and place it in a tube at approximately
18 11:59 that evening. The tube was placed in a sealed container in a sealed box and marked
19 with Sheriff's case number: 081110404. The sealed tubes were placed into evidence by

---

[1] Sgt. Knipp was last certified in administering the horizontal gaze nystagmus test in February 2004. An accuracy rate of 80% is required to obtain certification. His accuracy rate is around 95%.

[2] Defense counsel objected to the admissibility of the numeric values of the preliminary breath test (PAB) on the grounds of reliability. On cross-examination, Sgt. Knipp testified that the PAB is used to establish the presence or absence of alcohol. The test is not held to a DPS standard and is not considered reliable. Accordingly, the Magistrate did not consider the numeric test results in reaching the opinions expressed in this Report and Recommendation.

- 3 -

1  Deputy Gifford. Sgt. Knipp does not know what happened with the blood. That was left to
2  Deputy Gifford.

3  Sgt. Knipp acknowledged that speeding is not in and of itself a basis for determining
4  that one is driving while intoxicated. He agreed that an alcoholic odor from one's mouth
5  may indicate another condition such as diabetes. He also agreed that there are other causes
6  of having red, watery blood shot eyes. He acknowledged that there are explanations other
7  than intoxication for observing clues in a horizontal gaze nystagmus test. Sgt. Knipp
8  concluded, however, that based on his observations of Defendant's driving and the testing
9  that was conducted that the Defendant was driving while intoxicated.

10  Criminologist Seth Ruskin from the Arizona Department of Public Safety Southern
11  Regional Crime Laborataory, testified that he received vials of blood with the Defendant's
12  name on it, sealed in a box that was labeled with Pima County Sheriff's Office number
13  081110404. He tested two samples of blood and concluded that the blood alcohol content
14  (BAC) of each was 0.235. It was Mr. Ruskin's opinion that a person would be intoxicated
15  with a BAC of that level. On cross-examination, Mr. Ruskin indicated that the tests fell
16  within the accepted margins of error and that duplicate tests were conducted to ensure
17  accuracy. Mr. Ruskin testified that he was very confident in the reliability of the test results.

## LEGAL STANDARD

18 U.S.C. § 3583(e)(3) and Fed.R.Crim.P. 32.1(b) permit the Court to revoke a term of supervised release and impose a prison term in its stead based upon findings made by a preponderance of the evidence rather than beyond a reasonable doubt.

## ANALYSIS

**1. The government proved by a preponderance of the evidence that the Defendant violated Standard Condition 1 (Allegations A & B).**

Standard Condition 1 prohibits commission of another crime. The government alleges that the Defendant drove under the influence of alcohol, in violation of ARS § 28-1381(A)(1) and (2) on November 10, 2008 (Allegation A) and committed the offense of extreme driving

- 4 -

under the influence of alcohol, in violation of ARS § 28-1382(A), on November 10, 2008 (Allegation B). ARS § 28-1381 provides:

> A. It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances:
>
> 1. While under the influence of intoxicating liquor . . . if the person is impaired to the slightest degree.
>
> 2. If the person has an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle and the alcohol concentration results from alcohol consumed either before or while driving or being in actual physical control of the vehicle.

Defendant violated Standard Condition 1 by committing the offense of driving while under the influence of alcohol, ARS § 28-1381(A)(1) and (2). Sgt. Knipp's testimony established that the Defendant had been drinking and that he was impaired; Defendant swerved in and out of his lane, drove far in excess of the posted speed and overcorrected when trying to return to his lane. Mr. Ruskin's testimony established that Defendant's BAC was in excess of .08 within two hours of driving his vehicle.

Defendant also violated Standard Condition 1 by committing the offense of driving while under the extreme influence of intoxicating liquor, ARS § 28-1382(A). ARS § 28-1382 provides:

> A. It is unlawful for a person to drive or be in actual physical control of a vehicle in this state if the person has an alcohol concentration as follows within two hours of driving or being in actual physical control of the vehicle and the alcohol concentration results from alcohol consumed either before or while driving or being in actual physical control of the vehicle:
>
> 1. 0.15 or more but less than 0.20
>
> 2. 0.20 or more.
>
> B. A person who is convicted of a violation of this section is guilty of driving or being in actual physical control of a vehicle while under the extreme influence of intoxicating liquor.

The government proved by a preponderance of the evidence that the Defendant's BAC was in excess of .20 on the night of November 10, 2008, within thirty minutes of the Defendant driving his vehicle, in violation of this Arizona statute.

**2. The government proved by a preponderance of the evidence that the Defendant violated Standard Condition 13 (Allegation C).**

Standard Condition 13 required Defendant to notify immediately his probation officer if arrested or questioned by law enforcement. Defendant, through counsel, conceded at the hearing that Defendant failed to notify immediately his probation officer of his arrest on November 10, 2008.

**3. The government proved by a preponderance of the evidence that the Defendant violated Special Condition 3 (Allegation D).**

Special Condition 3 required the Defendant to abstain from alcohol. Sgt. Knipp testified that Defendant admitted to drinking alcohol. The tests conducted by Sgt. Knipp and Mr. Ruskin confirmed the presence of alcohol in Defendant's system. Thus, it is clear that the Defendant violated the condition that he abstain from alcohol.

## RECOMMENDATION

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court accept the Magistrate Judge's findings that the Defendant violated allegations A, B, C and D (Standard Conditions 1 and 13 and Special Condition 3) as outlined in the Petition to Revoke Supervised Release. (Doc. No. 30.) The parties have ten (10) days to serve and file written objections to the Report and Recommendation. The parties are advised that any objections should be filed with the following caption: **CR 05-1115-001-TUC-RCC (JCG).**

DATED this 22nd day of January, 2009.

_____
Jennifer C. Guerin
United States Magistrate Judge

- 6 -